IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DENNIS ORMSBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:14-cv-46-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

**I.   INTRODUCTION**

Dennis Ormsby ("Plaintiff") filed an application for disability insurance benefits and supplemental security income benefits. His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which the ALJ found Plaintiff not disabled from the alleged onset date of December 24, 2008, through the date of the decision. Plaintiff appealed to the Appeals Council, which rejected his request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 7); Def.'s Consent to Jurisdiction (Doc. 6).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id.*  It may contain both exertional and nonexertional limitations.  *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id.* at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id.*

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla, but less than a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) ("'Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.'") (alteration added).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims."  *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam).

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was thirty-six years old at the time of the hearing before the ALJ and his attorney represented at the hearing that Plaintiff had at least a high school education. Tr. 25. Following the administrative hearing and employing the five-step process, the ALJ found at Step 1 that Plaintiff "has not engaged in [substantial gainful activity] since December 24, 2008, the alleged onset date." Tr. 18. At Step 2, the ALJ found that Plaintiff suffers from severe impairments of "degenerative disc disease (DDD) of the lumbar spine; history of deep venous thrombosis (DVT); bipolar disorder; depression; alcohol dependence, in remission; and history of cocaine abuse." *Id.* The ALJ then found at Step 3 that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." Tr. 19. Next, the ALJ found that Plaintiff has the RFC to perform light work with additional limitations. Tr. 21.

Following the RFC determination, the ALJ found at Step 4 that Plaintiff could not perform his past relevant work. Tr. 25. At Step 5, the ALJ found that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," and after consulting with the VE, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* The ALJ identified the following occupations as examples: "bench assembler," "garment sorter," and "surveillance system monitor." Tr. 26. Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 24, 2008, through the date of th[e] decision." *Id.*

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents two issues for this court's consideration in review of the ALJ's decision: (1) whether "[t]he Commissioner's decision should be reversed because the ALJ erred in not giving adequate weight to the opinion of [Plaintiff]'s treating physician, Dr. Fernando Lopez"; and (2) whether "[t]he Commissioner's decision should be reversed because the ALJ failed to properly apply the three-part pain standard established by the Eleventh Circuit for adjudicating claimants based upon complaints of pain." Pl.'s Br. (Doc. 12) at 3. The court will address each argument below.

## V. DISCUSSION

### A. *Whether the ALJ gave adequate weight to the opinion of Plaintiff's treating physician*

Plaintiff argues the ALJ erred by giving little weight to the opinion of Plaintiff's treating physician, Dr. Fernando Lopez, M.D, who is a psychiatrist at SpectraCare. Dr. Lopez provided a mental RFC of Plaintiff's limitations in which he opined that Plaintiff suffered from either a moderate or marked degree of impairment in every category:

1. Estimated degree of impairment of [Plaintiff]'s ability to interact appropriately with the general public – Marked
2. Estimated degree of impairment of [Plaintiff]'s ability to ask simple questions or request assistance – Marked
3. Estimated degree of impairment of [Plaintiff]'s ability to get along with co-workers or peers – Marked
4. Estimated degree of constriction of interests of [Plaintiff] – Marked
5. Estimated degree of deterioration in personal habits of [Plaintiff] – Moderate
6. Estimated degree of restriction of [Plaintiff]'s daily activities, e.g., ability to attend meetings (church, school, lodge, etc.), work around the house, socialize with friends and neighbors, etc. – Moderate
7. Estimated degree of impairment of [Plaintiff]'s ability to understand, remember and carry out simple instructions – Moderate

8. Estimated degree of impairment of [Plaintiff]'s ability to understand, remember and carry out complex instructions – Marked
9. Estimated degree of impairment of [Plaintiff]'s ability to understand, remember and carry out repetitive tasks – Moderate
10. Estimated degree of impairment of [Plaintiff]'s ability to maintain attention and concentration for extended periods – Marked
11. Estimated degree of impairment of [Plaintiff]'s ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances – Moderate
12. Estimated degree of impairment of [Plaintiff]'s ability to sustain a routine without special supervision – Moderate
13. Estimated degree of impairment of [Plaintiff]'s ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length or rest periods – Moderate
14. Estimated degree of impairment of [Plaintiff]'s ability to make simple work-related decisions – Moderate
15. Estimated degree of impairment of [Plaintiff]'s ability to respond appropriately to supervision – Moderate
16. Estimated degree of impairment of [Plaintiff]'s ability to respond appropriately to changes in the work setting  – Marked
17. Estimated degree of impairment of [Plaintiff]'s ability to respond to customary work pressures – Moderate
18. Estimated degree of impairment of [Plaintiff]'s ability to be aware of normal hazards and take appropriate precautions – Moderate

Tr. 415-17.

Plaintiff takes issue with the ALJ's decision to accord little weight to the above opinion by Dr. Lopez. The ALJ stated, "I give little weight to Dr. Lopez's overly restrictive medical source statements. Although Dr. Lopez is a treating medical source, his statements are apparently based on only three months of treatment and the assumption that [Plaintiff] was actively abusing alcohol and cocaine." Tr. 25 (citations omitted). Plaintiff asserts that "[t]he ALJ's findings regarding the amount of weight to give to [the opinion of] Dr. Lopez are in error" (1) because "Dr. Lopez treated [Plaintiff] during a period of sobriety and not during a period of substance abuse" and (2) because "the

treatment lasted from December 2, 2010, through June 6, 2011, which indicates a treatment period of over six months, and not a three month period of treatment which was found by the ALJ." Pl.'s Br. (Doc. 12) at 4 (citations omitted).

In general, "[a]bsent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel v. Comm'r, Soc. Sec. Admin.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the (1) treating physician opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). If the ALJ disregards a treating physician's opinion, or affords it less than "substantial or considerable weight," the ALJ must "'clearly articulate [the] reasons' for doing so." *Id.* (quoting *Phillips*, 357 F.3d at 1240-41).

Plaintiff contends that "Dr. Lopez's treatment records support his opinion, and this opinion is consistent with the additional medical evidence in the file," and thus was entitled to substantial weight. Pl.'s Br. (Doc. 12) at 4. However, a review of the decision as a whole reflects many inconsistencies, noted by the ALJ, between Dr. Lopez's opinions and other evidence of record:

> Dr. Lopez has completed a form indicating that [Plaintiff] has moderate deterioration in personal habits, moderate restriction of daily activities, and marked constriction of interests. . . .
>
> On the other hand, [Plaintiff] has reported that he takes care of his personal needs and grooming, has no problem with personal care, prepares his own meals, watches television, uses a computer, "piddles" around, drives a car,

8

can go out alone, and shops in stores and by computer. He testified that he feeds his dog, is taking two college courses, drives his roommate's car to school two days a week, attends Alcoholic Anonymous (AA) meetings, and drove himself to the hearing. Dr. Jordan noted that [Plaintiff] drove to his consultative psychological evaluation. He also noted [Plaintiff]'s neat grooming and good hygiene. He stated that [Plaintiff] can function independently, activities of daily living such as bathing and grooming are not limited, and daily living skills such as general cleaning and fixing light meals are not compromised by intellectual function or psychiatric function. [Plaintiff]'s appropriate dress, grooming, and hygiene have been noted during visits to SpectraCare.

. . . Dr. Lopez has indicated that [Plaintiff] has moderate impairment in the ability to respond appropriately to supervision and marked impairment in the abilities to interact appropriately with the general public, ask simple questions or request assistance, and get along with coworkers or peers.

On the other hand, [Plaintiff] has reported that he has friends, lives with friends, has no problems getting along with others, and gets along fair with authority figures. He testified that he lives with his ex-father-in-law and attends AA meetings. Dr. Jordan stated that [Plaintiff]'s ability to respond well to coworkers and supervision is compromised to a mild degree due to psychiatric issues. His cooperativeness has been noted. His participation in group therapy and good interaction with other group members has been noted at SpectraCare.

. . . Dr. Lopez has indicated that [Plaintiff] has moderate impairment in the abilities to understand, remember, and carry out simple instructions and repetitive tasks; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain a routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and respond to customary work pressures.

On the other hand, [Plaintiff] has reported that he follows instructions well and handles changes in routine fair. Dr. Jordan noted [Plaintiff]'s intact concentration abilities and motivation, and he stated that [Plaintiff]'s ability to carry out and remember simple, one-step instructions is not compromised; he can do multi-step tasks without some degree of supervision; and his ability to respond well to every day work pressures is compromised to a mild degree due to psychiatric issues. During a consultative evaluation on September 23, 2010, Mark B. Ellis, D.O., a

9

> family physician, noted [Plaintiff]'s alertness, good effort, and ability to follow simple commands and instructions without difficulty. His attentiveness has been noted on visits to SpectraCare.

Tr. 19-20 (citations omitted). Despite these contradictions, Plaintiff asserts in his brief that "[t]he opinions of Dr. Lopez and Dr. Jordan support each other, as both of these opinions indicate serious issues with being able to perform the mental and physical demands of employment on a regular and continuing basis." Pl.'s Br. (Doc. 12) at 7. Defendant responded to this argument, "To the extent Plaintiff is arguing Dr. Jordan's opinion . . . was consistent with Dr. Lopez's opinion and inconsistent with the ALJ's RFC, this argument is completely meritless. Any reasonable reading shows that the ALJ's RFC finding incorporates all of the relevant limitations from Dr. Jordan's opinion." Def.'s Br. (Doc. 13) at n.9.

The court agrees, as Dr. Jordan's opinion is, in fact, far less restrictive than that of Dr. Lopez.[5] Dr. Jordan opined that Plaintiff had "intact concentration abilities," short-term memory that was not compromised, generally intact long-term memory, judgment that was not compromised, "Daily Living Skills[,] such as general cleaning and fixing light meals," that were not compromised, and activities of daily living that were not limited. Tr. 356-57. Additionally, Dr. Jordan stated,

---

[5] Included in the "Confidential Report for the Disability Determination Service Unit" prepared by Dr. Jordan was a Global Assessment of Functioning [GAF] score assigned to Plaintiff, Tr. 356; however, the ALJ rejected the GAF score, stating that it was merely "a 'snapshot' of [Plaintiff]'s mental functioning whereas the [RFC] in this decision is based on the longitudinal evidence of the record" and that the "overly restrictive GAF score [wa]s inconsistent with [Dr. Jordan's] mental status examination results and his other medical source statements." Tr. 24. Plaintiff does not challenge the ALJ's rejection of that score. Thus, the court is not persuaded that a piece of properly rejected evidence bolsters Dr. Lopez's opinion.

> In terms of vocation, [Plaintiff]'s ability to carry out and remember instructions of simple one-step nature is not compromised. [Plaintiff] can do multi-step tasks without some degree of supervision. . . . [Plaintiff]'s ability to respond well to coworkers, supervision, and everyday work pressures is compromised to a mild degree due to psychiatric issues. Physical issues seem to be the primary limiting factor.

Tr. 357. The mild limitations found by Dr. Jordan were addressed in the RFC, and Plaintiff makes no argument to the contrary. Upon review, the ALJ clearly explained that Dr. Lopez's opinion is not supported by the record evidence. Accordingly, the ALJ showed good cause in discounting Dr. Lopez's opinion.

Plaintiff specifically challenges the ALJ's statement that "[Dr. Lopez's] statements are apparently based on only three months of treatment and the assumption that [Plaintiff] was actively abusing alcohol and cocaine." Tr. 25. Considering first the ALJ's statement that Dr. Lopez based his opinion of three months of treatment, Plaintiff asserts that the ALJ was incorrect and that Dr. Lopez actually treated Plaintiff for a period of over six months, lasting from December 2, 2010, through June 6, 2011. Pl.'s Br. (Doc. 12) at 4. However, as Defendant points out in response, Def.'s Br. (Doc. 13) at 9, Dr. Lopez provided his opinion to the ALJ in March 2011, approximately three months after December 2010, when the treatment began. Tr. 417. Thus, the ALJ's statement was accurate and Plaintiff's argument here has no merit.

Next, considering the ALJ's statement that Dr. Lopez based his opinion on the assumption that Plaintiff was actively abusing alcohol and cocaine, Plaintiff asserts that the ALJ was incorrect because Dr. Lopez's opinion "w[as] given during periods of

11

sobriety, and [was] not influenced by alcohol or substance abuse." Pl.'s Br. (Doc. 12) at 7.  Defendant responds,

> As Plaintiff points out, there is little support for the ALJ's statement that Dr. Lopez's opinion assumed Plaintiff was actively abusing alcohol and cocaine.  However, this error was harmless because the other reasons the ALJ identified provided good cause supported by substantial evidence for assigning Dr. Lopez's opinion less weight.

Def.'s Br. (Doc. 13) at 7 (citations omitted).  The court agrees that, as discussed above, substantial evidence supports the ALJ's good cause given for assigning little weight to the opinion of Dr. Lopez even without consideration of a history of, or present, drug use.  Additionally, the court would note that the ALJ acknowledged in at least two other statements in the decision that Plaintiff had a history of cocaine abuse, rather than present drug use.  *See* Tr. 19 ("Dr. Lopez also noted [Plaintiff]'s history of cocaine abuse."); Tr. 23 ("[Plaintiff] has a history of alcohol and cocaine abuse . . . .  He testified that he attends AA meetings, and he has been clean and sober since June 29, 2010.").  Thus, it is clear that the ALJ had the proper evidence before him and made a harmless error in misstating that Dr. Lopez's opinion was based on a period of drug use.

Finally, to the extent that Plaintiff asserts that it was error for the ALJ to discount Dr. Lopez's opinion without first recontacting Dr. Lopez in order to obtain clarification on the basis of his opinion, Pl.'s Br. (Doc. 12) at 8, the court is not persuaded.  The ALJ's failure to recontact a treating source does not warrant remand unless "'the record reveals evidentiary gaps which result in unfairness or clear prejudice.'  The likelihood of unfair prejudice may arise if there is an evidentiary gap that 'the claimant contends supports [his] allegations of disability.'"  *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008)

(quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). It appears that the ALJ was in possession of all of Dr. Lopez's records, and Plaintiff does not contend that there are additional, undisclosed records from Dr. Lopez which would have shed light on the basis for his opinion. There is not a requirement that the ALJ recontact a treating source merely to procure an explanation for a treating source's opinion that is not borne out by the source's treatment records or other medical evidence in the record. Finally, substantial evidence—namely plaintiff's medical records from other treating sources and, particularly, the opinion of the Dr. Jordan—supports the ALJ's decision. As such, the ALJ did not have a duty to recontact Dr. Lopez.

In sum, the ALJ's decision is supported by substantial evidence in the record, and Plaintiff has not shown that the ALJ lacked good cause in discounting the opinion of Dr. Lopez.

### B. *Whether the ALJ properly applied the three-part pain standard*

Plaintiff asserts "the Commissioner's decision should be reversed because the ALJ failed to properly apply the three-part pain standard established by the Eleventh Circuit for adjudicating claimants based upon complaints of pain." Pl.'s Br. (Doc. 12) at 8.

The Court of Appeals for the Eleventh Circuit has articulated its "pain standard," governing the evaluation of a claimant's subjective testimony about pain, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

13

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). "Thus, the ALJ must determine: first, whether there is an underlying medically determinable impairment that could reasonably be expected to cause the claimant's pain or other symptoms; and second, the intensity and persistence of the symptoms and their effect on the claimant's work." *Himes v. Comm'r of Soc. Sec.*, No. 13-14924, 2014 WL 4783405, at *5 (11th Cir. Sept. 26, 2014) (citing 20 C.F.R. § 416.929(a), (c)). The ALJ evaluates the "claimant's subjective testimony of pain" only after the claimant satisfies the first and one of the alternate portions of the second prong of the pain standard. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

The Eleventh Circuit has explained that, "in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Id.* at 1561. Importantly, it is only evidence of the underlying condition which could reasonably be expected to cause pain, not evidence of actual pain or its severity, which must be presented by the claimant to satisfy the "pain standard." *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991); *see also Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986); *Hill v. Barnhart*, 440 F. Supp. 2d 1269, 1272-73 (N.D. Ala. 2006). After making these determinations, the ALJ must then proceed to consider the claimant's subjective testimony about pain, and the ALJ's decision to reject or discredit such testimony is reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

Plaintiff argues that the ALJ did not apply this standard. The court does not agree. The ALJ found that Plaintiff has degenerative disc disease, an underlying medical

condition satisfying the first prong of the pain standard. Tr. 18, 22. The ALJ also found that Plaintiff satisfied prong two, stating "[Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* In fact, Plaintiff agrees in his brief that the ALJ made both of these findings. Thus, the ALJ properly applied the pain standard. However, the ALJ was still obligated to consider whether Plaintiff's pain was disabling. To that end, the ALJ properly made a determination of the credibility of Plaintiff's complaints, stating that, in light of all record evidence of which an extensive discussion followed, "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent" with the RFC. *Id.* Plaintiff merely challenges whether the ALJ applied the pain standard, but he does not challenge the ALJ's credibility determination about Plaintiff's subjective complaints. Based on the foregoing, the court finds no error in the ALJ's application of the pain standard.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 17th day of December, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE